## UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

```
-------------------------------------------------- x
                                                    :
In re:                                              :        Chapter 11
                                                    :
THE COLONIAL BANCGROUP, INC.,                       :        Case No. 09-32303 (DHW)
                                                    :
                Debtor.                             :
-------------------------------------------------- x
                                                    :
THE COLONIAL BANCGROUP, INC.,                       :
                                                    :
                Plaintiff,                          :        Adv. Proc. No. 09-03087
                                                    :        Adv. Proc. No. 10-03018
       v.                                           :        Adv. Proc. No. 10-03019
                                                    :
FEDERAL DEPOSIT INSURANCE                           :        RELIEF SOUGHT FROM A
CORPORATION, as Receiver for                        :        UNITED STATES
Colonial Bank,                                      :        DISTRICT COURT JUDGE
                                                    :
                Defendant.                          :
-------------------------------------------------- x
```

## MEMORANDUM OF LAW IN SUPPORT OF FDIC-RECEIVER'S MOTION TO WITHDRAW THE REFERENCE OF SEVERAL PENDING MATTERS TO CONSOLIDATE PROCEEDINGS IN DISTRICT COURT

Of Counsel:

Thomas R. Califano
John J. Clarke, Jr.
Jeremy Johnson
DLA Piper LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
(212) 335-4500

Dated: March 31, 2010

Michael A. Fritz, Sr.
Fritz & Hughes LLC
7020 Fain Park Drive Suite 1
Montgomery, Alabama 36117
(334) 215-4422

*Attorneys for the*
*Federal Deposit Insurance Corporation*
*as Receiver for Colonial Bank*

**Table of Contents**

Page

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ................................................................................................................ 4

    A.    The Parties ........................................................................................................ 4

    B.    The Debtor's Receivership Claim and Its District Court Action ........................... 4

    C.    The Debtor's Bankruptcy Court Proceedings Against the FDIC-Receiver ........... 6

        1.    The Debtor's First Adversary Proceeding ................................................ 6

        2.    Objection to the FDIC-Receiver's Proof of Claim .................................... 7

        3.    The Debtor's Second Adversary Proceeding ............................................ 8

        4.    The Debtor's Third Adversary Proceeding ................................................ 8

ARGUMENT: THIS COURT SHOULD WITHDRAW THE REFERENCE TO THE
    BANKRUPTCY COURT OF ALL OF THE DEBTOR'S PROCEEDINGS
    AGAINST THE FDIC-RECEIVER ...................................................................... 10

I.    RESOLUTION OF THE PROCEEDINGS WILL REQUIRE SUBSTANTIAL
    AND MATERIAL CONSIDERATION OF FEDERAL LAWS OTHER THAN
    TITLE 11 ................................................................................................... 10

    A.    Substantial and Material Consideration of FIRREA's Jurisdictional Bar
        Will Be Required ............................................................................... 10

    B.    The Debtor's Claims for Tax Refunds Also Will Require Substantial and
        Material Consideration of Other Federal Law ...................................... 14

    C.    The Debtor's Fraudulent Transfer Action Requires Substantial and
        Material Consideration of Federal Banking Law ................................. 19

II.    PERMISSIVE WITHDRAWAL WILL CONSOLIDATE ALL DISPUTES INTO
    A SINGLE PROCEEDING BEFORE THIS COURT .................................................. 20

CONCLUSION ............................................................................................................... 23

# Table of Authorities

Page

## Cases

*Am. First Fed., Inc. v. Lake Forest Park, Inc.,*
    198 F.3d 1259 (11th Cir. 1999) .......................................................................12, 13

*Block v. Anthony Tammaro, Inc. (In re Anthony Tammaro, Inc.),*
    56 B.R. 999 (D.N.J. 1986) .........................................................................................12

*Breeden v. Sphere Drake Insurance PLC (In re Bennett Funding Group, Inc.),*
    258 B.R. 67 (N.D.N.Y. 2000) .....................................................................................21

*Cal. Housing Secs., Inc. v. F.D.I.C.,*
    No. 99-71084, 12 F. App'x. 519 (9th Cir. June 13, 2001) .......................................15

*Capital Bancshares, Inc. v. F.D.I.C.,*
    957 F.2d 203, 210 (5th Cir. 1992) ...........................................................................15

*Congress Credit Corp. v. AJC Int'l, Inc.,*
    42 F.3d 686 (1st Cir. 1994)........................................................................................21

*Elscint v. First Wisconsin Fin. Corp. (In re Xonics, Inc.),*
    67 B.R. 33 (N.D. Ill. 1986) ......................................................................................12

*F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.),*
    110 B.R. 986 (Bankr. M.D. Fla. 1990) .....................................................................16

*F.D.I.C. v. Mercer Bancorp, Inc.,*
    No. 89-0849, 1990 WL 515173 (W.D. Mo. Dec. 5, 1990).......................................15

*Freeman v. F.D.I.C.,*
    56 F.3d 1394 (D.C. Cir. 1995) .............................................................................12, 13

*Holmes v. Grubman,*
    315 F. Supp. 2d 1376 (M.D. Ga. 2004) ...............................................................11, 21

*Hudson United Bank v. Chase Manhattan Bank,*
    43 F.3d 843 (3d Cir. 1994).........................................................................................13

*Imperial Credit Indus., Inc. v. F.D.I.C. (In re Imperial Credit Indus., Inc.),*
    No. 2:03-cv-08627 (JVS) (C.D. Cal. Jan. 26, 2004), slip op. ................................20

*Independent Bancgroup, Inc. v. F.D.I.C. Iin re Independent Bancgroup, Inc.),*
    217 B.R. 442 (Bankr. D. Vt. 1998) ...........................................................................17

-ii-

*In re Dana Corp.,*
     379 B.R. 449 (S.D.N.Y. 2007)..............................................................................12

*In re National Gypsum Co.,*
     134 B.R. 188 (N.D. Tex. 1991)............................................................................12

*In re Sevko, Inc.,*
     143 B.R. 114 (N.D. Ill. 1992) ..............................................................................21

*In re Toledo*, 170 F.3 1340,
     (11th Cir. 1999)...................................................................................................11

*Jump v. Manchester Life & Cas. Mgmt. Corp.,*
     438 F. Supp. 185 (E.D. Mo. 1977), *aff'd* 579 F.2d 449 (8th Cir. 1978)...........15, 16

*Lubin v. Cincinnati Ins. Co.,*
     411 B.R. 801 (N.D. Ga. 2009) ........................................................10, 11, 20, 21

*Northern Pipeline Co. v. Marathon Pipe Line Co.,*
     458 U.S. 50 (1982)................................................................................................3

*Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.),*
     163 B.R. 41 (S.D.N.Y. 1993)...............................................................................21

*Parklane/Atlanta Joint Venture (In re Parklane/Atlanta Joint Venture),*
     927 F.2d 532, 536 n.5 (11th Cir. 1991) ..........................................................21, 22

*Rosa v. R.T.C.,*
     938 F.2d 383 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991) .....................................13

*Safety Guide of Alabama, LLC v. McKnight Constr. Co. (In re Safety Guide of Alabama, LLC),*No. 2:08-mc-03415, 2009 WL 4456338 (M.D.Ala. Nov. 24, 2009).............................10

*TPI Int'l Airways, Inc. v. F.A.A. ( In re TPI Int'l Airways, Inc.),*
     222 B.R. 663 (S.D. Ga. 1998)..........................................................................20, 21

*United States v. ILCO, Inc.,*
     48 B.R. 1016 (N.D. Ala. 1985) ............................................................................12

*United States v. Johns-Manville Corp. (In re John-Manville Corp.),*
     63 B.R. 600 (S.D.N.Y. 1986)...............................................................................11

*Wedtech Corp. v. London (In re Wedtech Corp.),*
     81 B.R. 237 (S.D.N.Y. 1987)...............................................................................21

*Western Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.),*
    473 F.2d 262, 265 (9th Cir. 1973) ........................................................................15

Statutes and Rules

12 U.S.C. § 1821(d)(2)(A)..............................................................................4, 15

12 U.S.C. § 1821(d)(2)(D)....................................................................................4

12 U.S.C. § 1821 (d)(2)(E) ...................................................................................4

12 U.S.C. § 1821(d)(5)(A)..................................................................................13

12 U.S.C. § 1821(d)(5) .........................................................................................5

12 U.S.C. § 1821(d)(6)(A)........................................................................1, 2, 5, 13

12 U.S.C. § 1821(d)(9) .......................................................................................17

12 U.S.C. § 1821(d)(9)(A)..................................................................................18

12 U.S.C. § 1821(d)(13)(D)......................................................................2, 3, 12, 13

12 U.S.C. § 1821(j) ..............................................................................................5

12 U.S.C. § 1823(e)(1)...................................................................................17, 18

12 U.S.C. § 1831*o*(a)(1) .....................................................................................19

28 U.S.C. § 157(c) .............................................................................................22

28 U.S.C. § 157(d) ...................................................................................1, 3, 10, 12

28 U.S.C. § 1334 ............................................................................................3, 22

Fed. R. Bank. P. 5011(a) ......................................................................................1

Fed. R. Bank. P. 5011(c)......................................................................................7

Interagency Policy Statement on Income Tax Allocation In A Holding Company
    Structure, 63 Fed. Reg. 64757 (Nov. 23, 1998)..........................................16, 17

The Federal Deposit Insurance Corporation, as receiver for Colonial Bank, Montgomery, Alabama (the "FDIC-Receiver"), respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 157(d) and Rule 5011(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to withdraw the reference from the United States Bankruptcy Court for the Middle District of Alabama (the "Bankruptcy Court") with respect to (i) three separate adversary proceedings that have been filed against the FDIC-Receiver by the debtor The Colonial BancGroup, Inc. (the "Debtor") and (ii) the Debtor's objection to the FDIC-Receiver's protective proof of claim in the Debtor's bankruptcy case.[1]

Withdrawal of the reference is necessary to prevent the inefficiency and jurisdictional strife that would result from simultaneous litigation of identical controversies in this Court and in the Bankruptcy Court. Withdrawal of the reference also is necessary because resolution of the disputes that have been initiated by the Debtor in the Bankruptcy Court will require material consideration of federal laws other than the Bankruptcy Code.

<u>INTRODUCTION</u>

This motion concerns the collision of bankruptcy jurisdiction with this Court's exclusive statutory jurisdiction under the Federal Deposit Insurance Act, as amended, *inter alia*, by the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"). *See* 12 U.S.C. § 1821(d)(6)(A). The Debtor is the former holding company for Colonial Bank. In August 2009, it filed a petition under chapter 11 of the Bankruptcy Code weeks after its former

---

[1] The three adversary proceedings that are the subject of this motion are: *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 09- 3087; *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-3018; and *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-3019. Copies of the adversary complaints in these adversary proceedings are attached as Exhibits B, D and E to the accompanying Declaration of John J. Clarke, Jr., dated March 31, 2010 (the "Clarke Declaration"). A copy of the Debtor's objection to the FDIC-Receiver's bankruptcy proof of claim is attached as Exhibit C to the Clarke Declaration.

bank subsidiary, Colonial Bank, was closed and the FDIC-Receiver was appointed as its receiver.

The Debtor has filed five matters against the FDIC-Receiver in two different courts; all of them are substantially interrelated. One of those five proceedings is pending before this Court: an action styled *Colonial BancGroup v. F.D.I.C.*, No. 2:10-cv-0198 (MHT) (M.D. Ala.) (the "District Court Action"), which the Debtor filed on March 5, 2010. *See* Clarke Decl., Exh. A (complaint). There is no dispute that only this Court, and not the Bankruptcy Court, has jurisdiction to preside over the matters at issue in the District Court Action. *See* 12 U.S.C. § 1821(d)(6)(A) (limiting jurisdiction over suits seeking judicial determination of disallowed receivership claims to one of two specific federal district courts); 12 U.S.C. § 1821(d)(13)(D) (except as provided under section 1821(d)(6), "no court shall have jurisdiction" over specified categories of claim or action relating to a failed bank or the FDIC as its receiver).

The other four proceedings were filed by the Debtor against the FDIC-Receiver in the Bankruptcy Court. Three of those matters were filed only hours before the Debtor filed its District Court Action in a transparent attempt at forum shopping. Knowing that it was required, by statute, to file its District Court Action no later than March 5th, the Debtor objected to the FDIC-Receiver's bankruptcy proof of claim on March 4th and filed two additional adversary complaints against the FDIC-Receiver on March 4th and 5th, all of which substantially overlap the Debtor's District Court complaint. The purpose of these last-minute filings was obvious: to try to lodge preemptive jurisdiction in the Debtor's favored forum – the Bankruptcy Court – when the Debtor knew that it soon would be initiating an action in this Court under FIRREA that concerned substantially identical disputes.

The last of the Debtor's Bankruptcy Court proceedings that are the subject of this motion is another adversary proceeding. Unlike the Debtor's more recent filings, the complaint in that action was filed in late December 2009. But there have been no proceedings in that action other than the FDIC-Receiver's motion to dismiss the Debtor's complaint for failure to state a claim, which was filed on January 26th and as to which the Debtor has not yet filed a response. As with the Debtor's other Bankruptcy Court filings, the matters at issue in that earlier adversary proceeding unquestionably are related to claims asserted against the FDIC-Receiver in the Debtor's District Court Action.

The Debtor's procedural gamesmanship cannot obscure one fundamental truth: there is only one court – *this Court* – where all of these disputes can be resolved. The Bankruptcy Court cannot exercise jurisdiction over the matters at issue in the District Court Action. *See* 12 U.S.C. § 1821(d)(13)(D). Indeed, FIRREA's jurisdictional bar precludes the Bankruptcy Court from exercising jurisdiction over many of the disputes raised in the Debtor's filings there. Even if there were bankruptcy jurisdiction under 28 U.S.C. § 1334 over some aspects of the Bankruptcy Court proceedings, however, the Bankruptcy Court's jurisdiction under section 1334 is derived from the grant of jurisdiction to this Court under that section. *See* 28 U.S.C. § 1334 (discussing jurisdiction granted to "district courts"). As required by the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), this Court always retains the power to withdraw the reference of such jurisdiction from the Bankruptcy Court when circumstances warrant, as plainly they do here. *See* 28 U.S.C. § 157(d).

This Court should withdraw the reference as to all four of the Debtor-initiated Bankruptcy Court matters, where they can be consolidated with the District Court Action, in order to permit all of the parties' disputes to be litigated in a single, consolidated proceeding. In

addition to the discretionary factors that clearly favor such an order, the standard for mandatory withdrawal of the reference – that resolution of the proceeding will require substantial consideration of federal law other than title 11 – is amply met for various reasons that are set forth below.

BACKGROUND

A.     The Parties

The Debtor was a bank holding company with its principal place of business in Montgomery, Alabama and was the holding company for Colonial Bank until the bank was closed by regulators.  *See* Dist. Ct. Compl. (Clarke Decl., Exh. A), ¶¶ 1, 2.  In an order dated August 14, 2009, the Alabama State Banking Department closed Colonial Bank and appointed the FDIC-Receiver.  *Id.*, ¶ 8.  By operation of law, the FDIC-Receiver succeeded to the rights, titles, powers and privileges of Colonial Bank, 12 U.S.C. § 1821(d)(2)(A), and it is empowered, among other things, to take over the assets of and operate that institution, collect all obligations and money due the institution, preserve and conserve the assets and property of the institution and place the institution in liquidation and proceed to realize upon its assets, 12 U.S.C. §§ 1821(d)(2)(D), (E).

On August 25, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtor continues as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code but currently has no business operations or reasonable prospects of generating future revenue or reorganizing.  No trustee or examiner has been appointed. *See* Dist. Ct. Compl., ¶ 12.

B.     The Debtor's Receivership Claim and Its District Court Action

In accordance with its governing statute, the FDIC-Receiver established November 19, 2009 as the deadline for filing claims with respect to the Colonial Bank receivership.  Dist.

Ct. Compl., ¶ 13.  The Debtor alleges that it filed a receivership claim on November 19, 2009.  *Id.*, ¶ 14.  In a letter dated January 6, 2010, the FDIC-Receiver disallowed the Debtor's receivership claim on the ground that the claims asserted therein had not been proven to the satisfaction of the receiver.[2]

The FDI Act permits a claimant whose receivership claim has been disallowed to file an action in one of two specified federal district courts seeking a judicial determination of that disallowed claim.  *See* 12 U.S.C. § 1821(d)(6)(A).  Such an action must be filed no later than 60 days after the date of the disallowance, and it only can be filed in the federal district court for the District of Columbia or for the district in which the failed bank had its principal place of business, which in the case of Colonial Bank is this Court.  *Id.*

On March 5, 2010, the Debtor filed its complaint against the FDIC-Receiver in the District Court Action.  In that complaint, the Debtor seeks *de novo* judicial determination of its disallowed receivership claim.  *See* Dist. Ct. Compl., ¶¶ 114-16.[3]  The complaint describes claims asserted by the Debtor against the Colonial Bank receivership in a variety of categories, including:  (1) intercompany receivables, *id.*, ¶¶ 24-26; (2) tax related claims, *id.*, ¶¶ 27-38; (3) claims arising from capital contributions by the holding company to Colonial Bank, including challenges to such contributions as alleged fraudulent transfers, *id.*, ¶¶ 39-43; (4) claims with

---

[2] Under 12 U.S.C. § 1821(d)(5)(D), "[t]he receiver may disallow any portion of any claim by a creditor or claim of security, preference or priority which is not proved to the satisfaction of the receiver."

[3] The complaint also seeks a declaratory judgment that the disallowance of the Debtor's claim is "void" and an order requiring the FDIC-Receiver to reconsider that disallowance, *see* Dist. Ct. Compl., ¶ 121, both of which forms of relief are expressly barred by statute.  *See* 12 U.S.C. § 1821(d)(5)(E) ("No court may review the Corporation's determination pursuant to subparagraph (D) to disallow a claim."); 12 U.S.C. § 1821(j) ("no court may take any action . . . to restrain or affect the exercise of powers or functions of the Corporation as conservator or receiver").  The complaint also asserts a purported claim for "conversion," *see* Dist. Ct. Compl., ¶ 117-19, which is inactionable for other reasons that the FDIC-Receiver will address when it responds to the complaint.

5

respect to certain series of REIT preferred securities that were issued by a subsidiary of Colonial Bank, *id.*, ¶¶ 44-51; (5) preference claims, *id.* ¶¶ 52-56; (6) vendor contract claims, *id.*, ¶¶ 57-59; (7) claims for allegedly improper sale of assets by the FDIC-Receiver, *id.*, ¶¶ 60-63; (8) claims with respect to the balances in six alleged deposit accounts that the Debtor claims were accounts of the holding company, *id.*, ¶¶ 64-74; (9) administrative claims, *id.*, ¶¶ 75-76; (10) claims for employee related costs, *id.*, ¶¶ 77-81; (11) insurance claims, *id.*, ¶¶ 82-85; (12) indemnification claims, *id.*, ¶¶ 86-88; (13) other contingent or unliquidated claims, *id.*, ¶ 89; (14) claims for fees and expenses incurred in Bankruptcy Court, *id.*, ¶¶ 90-91; (15) claims with respect to certain Orlando real estate, *id.*, ¶¶ 92-95; (16) claims for interest, *id.*, ¶ 96; and (17) claims for the Debtor's equity interest in Colonial Bank, *id.*, ¶ 97.

The FDIC-Receiver currently is in discussions with the Debtor's counsel to establish a schedule for its response to the complaint in the District Court Action.

C.     The Debtor's Bankruptcy Court Proceedings Against the FDIC-Receiver

As previously mentioned, on March 4 and 5, 2010 immediately before commencing its District Court Action under FIRREA, the Debtor made a series of filings in the Bankruptcy Court in an attempt to preemptively lodge jurisdiction in that court over the parties' disputes.  In addition to those filings, one adversary proceeding filed by the Debtor against the FDIC-Receiver has been pending, with virtually no activity, since December 15, 2009.

1.     The Debtor's First Adversary Proceeding

On December 15, 2009, the Debtor filed a complaint against the FDIC-Receiver in an adversary proceeding styled *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 09-03087 (DHW) (the "First Adversary Proceeding").  *See* Clarke Decl., Exh. B (complaint).  The filing was a response to two motions that the FDIC-Receiver filed in the Debtor's bankruptcy case that are still pending:  (1) a motion seeking relief from the automatic stay to allow the FDIC-Receiver

6

to setoff its claims against the Debtor against certain disputed account balances that the Debtor claims were owed to it; and (2) a motion seeking to convert the Debtor's chapter 11 case to a liquidation under chapter 7 of the Bankruptcy Code because of the significant uncured deficits that exist under a prepetition capital maintenance commitment that was made by the Debtor to federal bank regulators. A Bankruptcy Court evidentiary hearing with respect to those motions (which are not a subject of this motion for withdrawal of the reference) is scheduled for May 26, 2010.

In its complaint in the First Adversary Proceeding, the Debtor asserted that its capital maintenance commitment to federal bank regulators should be disregarded as a purported fraudulent conveyance. *See* First Adv. Compl., ¶¶ 15-18. The Debtor's cursory complaint falls well short of the pleading specificity required under recent Supreme Court decisions. On January 26, 2010, the FDIC-Receiver filed a motion to dismiss the complaint in that action for failure to state a claim upon which relief can be granted. The Debtor has not yet responded to that motion. There have been no further proceedings to date in that adversary proceeding.[4]

### 2.     Objection to the FDIC-Receiver's Proof of Claim

On March 4, 2010, the Debtor filed a conclusory objection to the FDIC-Receiver's proof of claim in its bankruptcy case. In support of its objection, the Debtor submitted a declaration from its chief restructuring officer, purportedly based on personal knowledge, which in large part merely recited verbatim the allegations from the Debtor's complaint in the District Court Action. *See* Clarke Decl., Exh. C (Objection to Proof of Claim), Exh. 1 (Declaration of Kevin O'Halloran) (the "O'Halloran Declaration"); *compare* O'Halloran Declaration, ¶¶ 13-53 *with*

---

[4] The FDIC-Receiver intends to file with the Bankruptcy Court a motion to stay all of the proceedings that are the subject of this motion, in accordance with Bankruptcy Rule 5011(c).

Dist. Ct. Compl., ¶¶ 24-95. The FDIC-Receiver currently is in discussions with the Debtor's counsel to establish a schedule for its response to the objection.

### 3. The Debtor's Second Adversary Proceeding

Also on March 4, 2010, the Debtor initiated an adversary proceeding against the FDIC-Receiver, styled *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-3018 (DHW) (the "Second Adversary Proceeding"), in which the Debtor seeks a declaratory judgment from the Bankruptcy Court determining that the Debtor, not the FDIC-Receiver, owns certain specific property, namely, certain tax refunds, certain insurance policy proceeds and certain personal property. *See* Second Adv. Proc. Compl. (Clarke Decl., Exh. D).

The allegations regarding tax refunds in the declaratory judgment action are substantially the same as the Debtor's allegations on this subject in its complaint in the District Court Action. *Compare* Dist. Ct. Compl., ¶¶ 27-38 *with* Second Adv. Compl., ¶¶ 9-19. The allegations also are essentially the same as the accompanying paragraphs of the O'Halloran Declaration submitted in support of the Debtor's objection to the FDIC-Receiver's proof of claim. *Compare* O'Halloran Decl., ¶¶ 19-22 *with* Second Adv. Compl., ¶¶ 9-19. The allegations relating to the parties' disputes over ownership of insurance policy proceeds also substantially overlap across the three separate proceedings. *Compare* Dist. Ct. Compl., ¶¶ 82-85 *with* O'Halloran Decl., ¶¶ 46-47 *with* Second Adv. Compl., ¶¶ 20-33.

The FDIC-Receiver currently is in discussions with the Debtor's counsel to establish a schedule for its response to the complaint in the Second Adversary Proceeding.

### 4. The Debtor's Third Adversary Proceeding

Finally, on March 5, 2010, the Debtor filed yet another declaratory judgment action against the FDIC-Receiver in the Bankruptcy Court, styled *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-3019 (DHW) (the "Third Adversary Proceeding"). *See* Clarke

Decl., Exh. E (complaint).  In that action, the Debtor seeks declaratory relief that the Debtor, and

not the FDIC-Receiver, owns certain real property located in Orlando, Florida that had been the

location of a branch of Colonial Bank before the bank was closed by its regulators.  The property

is the subject of substantially similar allegations in the Debtor's complaint against the FDIC-

Receiver in the District Court Action.  *Compare* Third Adv. Compl., ¶¶ 7-19 *with* Dist. Ct.

Compl., ¶¶ 92-95.

The FDIC-Receiver currently is in discussions with the Debtor's counsel to establish a

schedule for its response to the complaint in the Second Adversary Proceeding.

ARGUMENT

THIS COURT SHOULD WITHDRAW THE REFERENCE TO
THE BANKRUPTCY COURT OF ALL OF THE DEBTOR'S
PROCEEDINGS AGAINST THE FDIC-RECEIVER

Withdrawal of the reference of matters pending before the bankruptcy courts is governed

by 28 U.S.C. § 157(d), which provides that:

> The district court *may* withdraw, in whole, or in part, any case or
> proceeding referred under this section, on its own motion or on timely
> motion of any party, for cause shown.  The district court *shall*, on timely
> motion of a party, so withdraw a proceeding if the court determines that
> resolution of the proceeding requires consideration of both title 11 and
> other laws of the United States regulating organizations or activities
> affecting interstate commerce.

28 U.S.C. § 157(d) (emphasis added).  Courts recognize that the provision authorizes "two types

of withdrawals.  The first sentence of the statute authorizes permissive withdrawal, and the

second sentence provides for mandatory withdrawal."  *Lubin v. Cincinnati Ins. Co.*, 411 B.R.

801, 803 (N.D. Ga. 2009) (withdrawing reference of declaratory judgment action in which the

court likely would be required to give "substantial and material consideration" of FIRREA).

In this instance, the reference should be withdrawn under both parts of the statute.  All

four proceedings will require substantial and material consideration of federal law other than the

Bankruptcy Code, and therefore is mandatory. In addition, withdrawal of the reference will allow all of the parties' disputes to be consolidated into a single proceeding in this Court, which is the only court with jurisdiction over all aspects of those disputes.

## I. RESOLUTION OF THE PROCEEDINGS WILL REQUIRE SUBSTANTIAL AND MATERIAL CONSIDERATION OF FEDERAL LAWS OTHER THAN TITLE 11

The decision to order mandatory withdrawal of the reference under 28 U.S.C. § 157(d) requires a "determination that resolution of the claims will require substantial and material consideration of . . . non-code statutes." *Safety Guide of Alabama, LLC v. McKnight Constr. Co. (In re Safety Guide of Alabama, LLC)*, No. 2:08-mc-03415, 2009 WL 4456338, *2 (M.D. Ala. Nov. 24, 2009); *see also Holmes v. Grubman*, 315 F. Supp. 2d 1376, 1379 (M.D. Ga. 2004). Withdrawal is also mandatory, however, "when complicated, interpretive issues are involved," *Holmes*, 315 F. Supp at 1379, or when analysis of the issues requires "significant interpretation of federal law that Congress would have intended to have decided by a district judge rather than a bankruptcy judge," *United States v. Johns-Manville Corp. (In re John-Manville Corp.)*, 63 B.R. 600, 602 (S.D.N.Y. 1986).

Each one of these factors applies here, and each requires withdrawal of the reference of all four of the Bankruptcy Court proceedings at issue –the Debtor's three adversary proceedings and the Debtor's objection to the FDIC-Receiver's proof of claim. Not only will substantial and material consideration of FIRREA and other federal laws be required in the course of those proceedings, but Congress expressly identified this Court as one of only two federal district courts with jurisdiction to consider such matters.

### A. Substantial and Material Consideration of FIRREA's Jurisdictional Bar Will Be Required

There can be no serious question that resolution of the Debtor's two adversary proceedings seeking declaratory relief will require substantial and material consideration of

FIRREA, mandating withdrawal. *See Lubin*, 411 B.R. at 804. In its two declaratory judgment

actions, the Debtor is certainly "seeking a determination of rights with respect to the assets of" a

failed bank for which the FDIC-Receiver has been appointed receiver. Such claims are not

actionable except in the receivership claims process and therefore are subject to FIRREA's

jurisdictional bar. *See* 12 U.S.C. § 1821(d)(13)(D).[5] The jurisdictional bar similarly will be at

issue in resolving the Debtor's objection to the FDIC-Receiver's claim, which based on the

statements made in the supporting O'Halloran Declaration appears to be predicated on assertions

that assets of the failed bank belong to the Debtor rather than the FDIC-Receiver. *See*

O'Halloran Decl., ¶¶ 19-53.

When it is appointed the receiver of a failed depository institution, the FDIC succeeds by

operation of law to "all rights, titles, powers, and privileges of the insured depository institution,

and of any stockholder, member, accountholder, depositor, officer, or director of such institution

with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A). In

the claims provisions of FIRREA, in turn, Congress created an exclusive claims process for

claims against or relating to failed bank receiverships. *See Freeman v. F.D.I.C.*, 56 F.3d 1394,

---

[5] Section 157(d) applies to "core" and "non-core" bankruptcy proceedings with equal force. *United States v. ILCO, Inc.*, 48 B.R. 1016, 1020 (N.D. Ala. 1985); *see also In re National Gypsum Co.*, 134 B.R. 188, 192 (N.D. Tex. 1991); *Block v. Anthony Tammaro, Inc. (In re Anthony Tammaro, Inc.)*, 56 B.R. 999, 1002-03 (D.N.J. 1986). As with other types of matters or proceedings, the reference to bankruptcy courts over objections to bankruptcy proofs of claim is subject to withdrawal under section 157(d). *In re Dana Corp.*, 379 B.R. 449, 455-56 (S.D.N.Y. 2007) (withdrawing the reference of an objection to the claim because resolution of the objection required substantial and material consideration, interpretation and application of CERCLA); *Elscint v. First Wisconsin Fin. Corp. (In re Xonics, Inc.)*, 67 B.R. 33, 33-34 (N.D. Ill. 1986) (withdrawing reference of adversary proceeding and objections to claims for the purpose of transferring them to district where substantially related action among the parties was pending). The Bankruptcy Court matters that are the subject of this motion reflect a mix of "non-core" and "core" proceedings. *See In re Toledo*, 170 F.3 1340 (11th Cir. 1999) ("If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding."). Withdrawal of the reference of all of those matters, both "core" and "non-core," is appropriate for the reasons discussed in the text.

1399 (D.C. Cir. 1995); *see Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 (11th Cir. 1999).

Submission to this receivership claims process is the exclusive remedy for all claims enumerated in section 1821(d)(13)(D), which provides:

> (D)     **Limitation on judicial review**
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over –
>
> (i)     any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii)     any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D); *see Freeman*, 56 F.3d at 1399. A person whose receivership claim has been disallowed may pursue an administrative appeal within the FDIC or commence an action in one of two federal district courts – the federal district court for the District of Columbia or for the federal district in which the failed bank had its principal place of business – seeking a judicial determination of the disallowed claim. *See* 12 U.S.C. § 1821(d)(6)(A). Other than as thus provided, however, "no court shall have jurisdiction over" a "claim" or "action" that is subject to the jurisdictional bar. 12 U.S.C. § 1821(d)(13)(D).

In effect, the jurisdictional bar provision of section 1821(d)(13)(D) works with FIRREA's claims procedures to impose a "statutory exhaustion requirement" that is "explicitly jurisdictional." *Rosa v. R.T.C.*, 938 F.2d 383, 395 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991) (jurisdictional bar applies to bar all claims that are subject to resolution through the exclusive claims process); *see Am. First Fed.*, 198 F.3d at 1263; *Freeman*, 56 F.3d at 1400 ("Section 1821(d)(13)(D) thus acts as a jurisdictional bar to claims or actions by parties who have not

exhausted their § 1821(d) administrative remedies."); *Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843, 849 (3d Cir. 1994) ("the purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs . . . to file their claims under FIRREA's administrative claims procedures before filing them in federal court").

The Debtor's two declaratory judgment actions obviously run afoul of this jurisdictional prohibition.  In both of those actions, the Debtor is seeking a judicial determination of rights in assets of Colonial Bank, a failed bank for which the FDIC-Receiver has been appointed receiver, namely, tax refunds arising from taxes that were paid by or on behalf of Colonial Bank, *see* Second Adv. Compl, ¶¶ 9-19, insurance policy proceeds under insurance policies in which Colonial Bank is expressly named as an insured, *see id.*, ¶¶ 20-33, unspecified personal property that is located in Colonial Bank facilities as to which there is no dispute the FDIC-Receiver is the rightful owner, *id.*, ¶¶ 34-37,  and real property in Orlando, Florida as to which the debtor asserts legal title but on which, it does not dispute, a Colonial Bank branch was located, *see* Third Adv. Compl., ¶¶ 7-11.  All of these issues also were discussed in the O'Halloran Declaration that was submitted in support of the Debtor's conclusory objection to the FDIC-Receiver's bankruptcy proof of claim.  *See* O'Halloran Decl., ¶¶ 19-22 (taxes); ¶¶ 46-47 (insurance proceeds); ¶ 36 (personal property); ¶¶ 51-53 (real property in Orlando).

The Debtor included *all* of these same disputes in its FIRREA complaint against the FDIC-Receiver in the District Court Action because the Debtor recognized that those disputes were subject to the exclusive receivership claims process.  *See* Dist. Ct. Compl., ¶¶ 27-38 (taxes); ¶¶ 82-85 (insurance proceeds); ¶¶ 60-63 (personal property); ¶¶ 92-95 (Orlando property).  Thus, even the Debtor's own filings demonstrate that resolution of those disputes will require substantial and material consideration of FIRREA.

Moreover, even a finding that some of these claims *do not* seek a determination of rights with respect to assets of the failed bank – which the FDIC-Receiver would strongly contest – only could be reached after a court has given substantial and material consideration to the scope of FIRREA's jurisdictional bar. This is an analysis that *only* the District Court can undertake because only the District Court is vested with jurisdiction over the matters in dispute between the Debtor and the FDIC-Receiver, regardless of the outcome of that inquiry.

B.    The Debtor's Claims for Tax Refunds Also Will Require Substantial and Material Consideration of Other Federal Law

In its Second Adversary Proceeding and in its objection to the FDIC-Receiver's proof of claim, the Debtor asserts that it is the owner of potentially significant tax refunds that are expected to be paid by various taxing authorities including the Internal Revenue Service. *See* Second Adv. Compl., ¶¶ 9-19; O'Halloran Decl., ¶¶ 19-22. To the contrary, however, all or substantially all of any tax refunds that might be recovered from taxing authorities will be attributable to taxes paid, and losses sustained, by Colonial Bank. The FDIC-Receiver is the owner of such refunds as the statutory successor to the failed bank. *See* 12 U.S.C. § 1821(d)(2)(A).

The Debtor's claims to tax refunds contradict federal law governing taxation of banks in a holding company structure. Moreover, its attempt to alter this rule in reliance on an unsigned document that it describes as a "tax sharing agreement" contradicts two separate provisions of the FDI Act. All of these non-bankruptcy laws must be substantially and materially considered in the course of litigating the Debtor's claims for tax refunds.

When corporations file joint income tax returns as a consolidated group, tax attributes such as net operating loss carrybacks, and tax refunds arising from the application of such attributes, inure to the benefit of the entity that actually paid the taxes and incurred the loss

giving rise to the refund. *See, e.g., Capital Bancshares, Inc. v. F.D.I.C.*, 957 F.2d 203, 210 (5th Cir. 1992) ("[t]he refund is the property of the [subsidiary], which could have generated the refund on its own had it filed with the IRS as a separate entity" and therefore the FDIC as receiver of the subsidiary was entitled to the tax refunds attributable to the losses of the subsidiary); *Western Dealer Mgmt., Inc. v. England (In re Bob Richards Chrysler-Plymouth Corp.)*, 473 F.2d 262, 265 (9th Cir. 1973); *Jump v. Manchester Life & Cas. Mgmt. Corp.*, 438 F. Supp. 185, 188-89 (E.D. Mo. 1977), *aff'd* 579 F.2d 449 (8th Cir. 1978); *see also Cal. Housing Secs., Inc. v. F.D.I.C.*, No. 99-71084, 12 F. App'x 519, 520 (9th Cir. June 13, 2001); *F.D.I.C. v. Mercer Bancorp, Inc.*, No. 89-0849, 1990 WL 515173, at *2 (W.D. Mo. Dec. 5, 1990); *F.D.I.C. v. Brandt (In re Florida Park Banks, Inc.)*, 110 B.R. 986, 989 (Bankr. M.D. Fla. 1990).

In the Ninth Circuit's seminal decision in *Bob Richards*, the trustee of a bankrupt subsidiary brought an action against the parent corporation to obtain a tax refund that had been received by the parent on tax returns submitted on behalf of the consolidated group. 473 F.2d at 263. The court concluded that the refund belonged to the subsidiary, not the parent, because it arose from a net operating loss incurred by the subsidiary and the "entire refund[] was due to the earnings history of the bankrupt." *Id.* In such circumstances, allowing the parent to keep any refunds just because the parties had chosen a "procedural device to facilitate their income tax reporting unjustly enriches the parent." *Id.* at 265; *see also Jump*, 438 F. Supp. at 189 (holding refund "is not a debt owed by [parent] to [subsidiary], but rather, a fund which [parent] holds in a specific trust for [subsidiary]").

The rule articulated in *Bob Richards* and regularly followed by courts thereafter acknowledges that the members of a consolidated tax group can enter into an agreement altering the common law rule. However, in the case of the Debtor and other bank holding companies,

such a contractual alteration of the common law rule is not permissible under federal banking law. In 1998, federal bank regulators, including the Federal Reserve, the Office of the Comptroller of the Currency and the FDIC (all of which regulated the Debtor or Colonial Bank at relevant times), issued a uniform policy statement regarding intercompany tax allocation agreements for banking organizations that file an income tax return as members of a consolidated group. *See* Interagency Policy Statement on Income Tax Allocation In A Holding Company Structure, 63 Fed. Reg. 64757 (Nov. 23, 1998) (the "Policy Statement").

In the Policy Statement, the agencies stated that tax sharing arrangements among the members of a bank's or thrift's consolidated tax group "should result in no less favorable treatment to the [insured depository] institution than if it had filed its income tax return as a separate entity." *Id.* at 64757. Consistent with pre-existing law discussed above, the Policy Statement provided that "a parent company that receives a tax refund from a taxing authority obtains these funds *as agent for the consolidated group* on behalf of the group members." *Id.* at 64759 (emphasis added). As a result, a tax sharing agreement for a bank holding company group "*should not purport to characterize refunds attributable to a subsidiary depository institution that the parent receives from a taxing authority as the property of the parent.*" *Id.* (emphasis added).

In its filings against the FDIC-Receiver, the Debtor attempts to overcome this dispositive principle of federal tax law by asserting that it was a party to an alleged "tax sharing agreement" that it contends somehow altered the *Bob Richards* rule for the years in question, notwithstanding the express federal policy statement prohibiting such an arrangement. *See* Second Adv. Compl., ¶¶ 16-17; O'Halloran Decl., ¶¶ 19, 21; *see also* Dist. Ct. Compl., ¶¶ 27-31. The Debtor did not attached a copy of this alleged "agreement" to its court filings, but it

16

Case 10-03018   Doc 10   Filed 03/31/10   Entered 03/31/10 20:37:54   Desc Main
Document      Page 21 of 28

previously has identified as an alleged "tax sharing agreement" an unsigned and undated "Intercorporate Tax Allocation Policy," a copy of which (as previously identified by the Debtor) is attached as Exhibit F to the Clarke Declaration.

Under the FDI Act, however, no such unsigned, undated document is valid to assert claims that tend to diminish the interests of the FDIC as receiver in assets of a failed bank, such as income tax refunds. *See* 12 U.S.C. §§ 1821(d)(9), 1823(e)(1); *Independent Bancgroup, Inc. v. F.D.I.C. (In re Independent Bancgroup, Inc.)*, 217 B.R. 442, 447-48 (Bankr. D. Vt. 1998) (tax refund was type of asset subject to written agreement requirement, and holding company claim to refunds based on alleged agreement was barred by section 1823(e)). Indeed, in order to enforce an agreement by a failed bank against the FDIC as its receiver, a counterparty must establish that the agreement: (1) was in writing; (2) was executed by the failed bank and by the claimant contemporaneously with the bank's acquisition of the asset to which the agreement relates; (3) was approved by the failed bank's board of directors, or its loan committee, as reflected in the minutes; and (4) has been continuously an official record of the bank from the time of its execution.[6]  12 U.S.C. § 1823(e)(1).  A document that fails to meet any of these

---

[6] Section 1823(e)(1) provides:

(e)  **Agreements against interests of Corporation**

    (1)  **In general**

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section or under section 1821 of this title, either as security for or by purchase o as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement –

    (A)    is in writing;

    (B)    was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;

    (C)    was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said

17

criteria "shall not form the basis of, or substantially comprise, a claim against the receiver . . ." 12 U.S.C. § 1821(d)(9)(A).

In this case, the "tax sharing agreement" cited by the Debtor fails most of these requirements. While there is a "written" policy, the FDIC-Receiver is not aware of any signed version of that "policy" and has not seen evidence that, even if it was approved at some date in the past, that policy remained in effect throughout the periods at issue. Without question, these non-bankruptcy law issues will need to be addressed in any dispute over the Debtor's claim to tax refunds that federal law states are the property of the FDIC-Receiver.

C.     The Debtor's Fraudulent Transfer Action Requires Substantial and Material Consideration of Federal Banking Law

In its First Adversary Proceeding, the Debtor challenges its capital maintenance commitment to federal banking regulators as an allegedly constructive fraudulent transfer. That commitment was agreed to by the Debtor holding company under the "prompt corrective action" regime of bank regulation that is set forth in the FDI Act and other laws, which expressly provide that the purpose of that regime is "to resolve the problems of insured depository institutions at the least possible long-term loss to the [FDIC's] deposit insurance fund." *See* 12 U.S.C. § 1831*o*(a)(1); 12 C.F.R. § 225.4(a).

In this case, the Debtor holding company promised its principal regulator, the Board of Governors of the Federal Reserve System, acting for itself and through the Federal Reserve Bank of Atlanta, that it would "utilize its financial and managerial resources to assist its subsidiary bank in addressing weaknesses identified by its primary banking supervisors and

___

board or committee; and

        (D)     has been continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1).

achieving/maintaining compliance with" the bank's own agreement with bank regulators, including a commitment to raise its Tier I Leverage Capital ratio to a level of not less than 8 percent by February 28, 2009.

The Debtor and the Bank failed in their capital commitments, leading regulators to increase their level of oversight in consent cease and desist orders in which, among other things, the Debtor reaffirmed its commitment to make sure that its subsidiary Colonial Bank raised its Tier I Leverage Capital ratio to the required level. That did not happen before the Bank was closed by regulators, however, and the FDIC-Receiver therefore is pursuing its remedies in the Debtor's bankruptcy case based on the approximately $900 million deficit that existed under this capital maintenance commitment when the Bank was closed.

In the First Adversary Proceeding, the Debtor has asserted that its commitment to federal regulators to avoid more severe regulatory actions should be avoided as constructively fraudulent. According to the Debtor's cursory allegations, the holding company might have been insolvent at the time of that commitment and therefore should be allowed to escape its responsibilities under that commitment. *See* First Adv. Compl., ¶¶ 16-17. The resolution of this action (if the complaint survives dismissal) will require substantial and material consideration of federal banking laws governing the regulatory supervision of troubled depository institutions and their holding companies. *See* 12 U.S.C. § 1831*o*(a)(1); 12 C.F.R. § 225.4(a); *see, e.g., Imperial Credit Indus., Inc. v. F.D.I.C. (In re Imperial Credit Indus., Inc.)*, No. 2:03-cv-08627 (JVS) (C.D. Cal. Jan. 26, 2004), slip op. at 3-4 (granting motion of the FDIC to withdraw the reference of adversary proceeding brought by bankrupt holding company asserting similar constructive fraudulent transfer claims) (attached as Exhibit G to the accompanying Clarke Declaration).

## II.  PERMISSIVE WITHDRAWAL WILL CONSOLIDATE ALL DISPUTES INTO A SINGLE PROCEEDING BEFORE THIS COURT

Quite apart from the compelling grounds for mandatory withdrawal of the reference set forth above, "cause" exists to withdraw the reference as to all of the Debtor's Bankruptcy Court proceedings against the FDIC-Receiver to permit all disputes to be addressed in a single consolidated proceeding in this Court, where the Debtor's action against the FDIC-Receiver under FIRREA already is pending and must be litigated.

"The decision of whether to grant a motion for permissive withdrawal is within the sound discretion of the district court.  In order to establish that permissive withdrawal is appropriate, the moving party must demonstrate that sufficient 'cause' exists for withdrawal."  *Lubin*, 411 B.R. at 804 (quoting  *TPI Int'l Airways, Inc. v. F.A.A. ( In re TPI Int'l Airways, Inc.)*, 222 B.R. 663, 668 (S.D. Ga. 1998)).  Factors courts consider in evaluating whether "cause" has been shown include "decreasing forum shopping and confusion," "promoting the economical use of parties' resources" and ensuring the "efficient use of judicial resources."  *Lubin,* 411 B.R. at 804 (quoting *Parklane/Atlanta Joint Venture (In re Parklane/Atlanta Joint Venture)*, 927 F.2d 532, 536 n.5 (11th Cir. 1991) and citing *TPI Int'l Airways*, 222 B.R. at 668).

It is common for district courts to withdraw the reference of adversary proceedings, and even objections to proofs of claim, in order to consolidate those matters with related actions that are pending in district court.  *See, e.g., Congress Credit Corp. v. AJC Int'l, Inc.*, 42 F.3d 686, 691 (1st Cir. 1994) (supporting withdrawal of the reference because "it makes no sense for the two actions to proceed along separate tracks"); *Holmes v. Grubman*, 315 F. Supp. 2d 1376, 1381 (M.D. Ga. 2004) (granting conditional withdrawal to permit adversary proceeding to be consolidated with related consolidated securities litigation pending in another district); *Breeden v. Sphere Drake Insurance PLC (In re Bennett Funding Group, Inc.)*, 258 B.R. 67, 77 (N.D.N.Y.

2000) ("With respect to the efficient use of judicial resources, it appears highly inefficient to force the defendants to litigate many of the same issues in two separate forums"); *Pan Am Corp. v. Delta Air Lines, Inc. (In re Pan Am Corp.)*, 163 B.R. 41, 44 (S.D.N.Y. 1993) (withdrawing reference of adversary proceeding where two related actions were pending in district court); *In re Sevko, Inc.*, 143 B.R. 114, 117 (N.D. Ill. 1992) ("Ullman-Briggs is in a situation in which it is involved in two proceedings in bankruptcy and non-bankruptcy forums, litigating essentially the same core of transactional facts, with different parties. Research indicates that when this situation arises, it has generally been found to constitute cause for discretionary withdrawal.") (collecting cases); *Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237, 239-40 (S.D.N.Y. 1987) (withdrawing reference of fraudulent transfer action to be consolidated with related case pending in district court).

In this case, the circumstances are, if anything, even more compelling. A comparison of the Debtor's filings establishes that its various Bankruptcy Court proceedings against the FDIC-Receiver are not only substantially related to, but in fact are essentially the same as, the disputes raised in the Debtor's District Court Action. In many instances, the Debtor's allegations are repeated nearly verbatim among the various filings. Withdrawal of the reference of the four Bankruptcy Court proceedings will promote efficiency of judicial administration, reduce the expenses of the parties and ultimately result in a swifter resolution of the various litigation between the Debtor and the FDIC-Receiver by consolidating all of that litigation before a single forum.

Moreover, *only* this Court has jurisdiction over all aspects of that litigation. Not only is this Court one of only two district courts that could preside over the Debtor's FIRREA action under the governing statute, but it is also the court through with the Bankruptcy Court derives its

own jurisdiction in the Debtor's chapter 11 case. *See Parklane Hosiery*, 927 F.2d at 535 ("In his rush to establish his right of access to the bankruptcy court, Silvers ignores the fact that Congress has placed original jurisdiction over bankruptcy cases and proceedings in the district courts.") (citing 28 U.S.C. § 1334). Therefore, withdrawal of the reference is the only avenue for bringing the various disputes into a single forum for efficient litigation and adjudication.

<u>CONCLUSION</u>

For the foregoing reasons, the FDIC-Receiver respectfully requests that this Court withdraw the reference to the Bankruptcy Court with respect to the Debtor's objection to the FDIC-Receiver's proof of claim and with respect to the three adversary proceedings styled *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 09-03087, *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-03018 and *Colonial BancGroup, Inc. v. F.D.I.C.*, Adv. Proc. No. 10-03019, so that they may be consolidated with the pending action in this Court, *Colonial BancGroup, Inc. v. F.D.I.C.*, No. 2:10-cv-0198 (MHT), and that the Court grant the FDIC-Receiver such other and further relief as it may deem just and proper.

Dated: Montgomery, Alabama
      March 31, 2010                      Respectfully submitted,


                                  /s/ Michael A. Fritz, Sr.
                                  Michael A. Fritz, Sr.
                                  michael@fritzandhughes.com
                                  Fritz & Hughes LLC
                                  7020 Fain Park Drive Suite 1
                                  Montgomery, Alabama 36117
                                  (334) 215-4422

                                  - and -

                                  Thomas R. Califano
                                  thomas.califano@dlapiper.com
                                  John J. Clarke, Jr.
                                  john.clarke@dlapiper.com
                                  Jeremy R. Johnson
                                  jeremy.johnson@dlapiper.com
                                  DLA Piper LLP (US)
                                  1251 Avenue of the Americas
                                  New York, New York  10020-1104
                                  (212) 335-4500

                                  Attorneys for the
                                   Federal Deposit Insurance Corporation,
                                   as Receiver for Colonial Bank